IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VALERO MARKETING AND SUPPLY COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| SOUTHCAP PIPE LINE COMPANY, | ) ) |
| Defendant. | ) |

Case No. 3:06-cv-623 DGW

**MEMORANDUM AND ORDER**

Currently pending before the Court are Motions for Summary Judgment filed by the Plaintiffs (Doc. 118) and Defendant (Doc. 119). The Court heard oral argument on these motions on August 6, 2009. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

BACKGROUND

Plaintiffs Valero Marketing and Supply and Premcor Refining Group filed this lawsuit in August 2006, alleging that Defendant Southcap Pipe Line Company improperly removed 418,357 barrels of crude oil designated as Qua Iboe from Plaintiffs' inventory on Southcap Pipe Line (Doc. 108). Valero makes the following legal claims against Southcap:

Count I: Liability for loss of the oil under the Interstate Commerce Act ("ICA");

Count II: Liability for violation of the Filed Rate Doctrine under the ICA;

Count III: Unjust discrimination and preference, in violation of the ICA;

Count IV: Breach of Bailment Contract;

Count V: Conversion under Illinois law; and

Count VI: Declaratory Judgment.

# FACTS

The parties agree and the Court finds the following to be undisputed facts. Plaintiff Premcor Refining Group ("Premcor") is a crude oil refiner. In 2005, Plaintiff Valero Marketing and Supply Company, a subsidiary of Valero Energy Corporation, acquired Premcor's parent company, Premcor Inc., which made Plaintiff Premcor a wholly owned subsidiary of Valero Energy Corporation.

Defendant Southcap ("Southcap") is an interstate common carrier pipeline and one of five joint owners of the Capline Pipeline System ("Capline"), which provides transport of crude oil.[1] Southcap has a tariff on file with the Federal Energy Regulatory Commission ("FERC"). Premcor contracted with Southcap to ship crude oil on Capline during the period relevant to this lawsuit. Prior to acquisition by Valero, Premcor used Capline to transport crude oil for use in its Midwest refineries. After Valero acquired Premcor, Valero took control of crude oil movement and inventory.

The Capline pipeline runs from St. James Louisiana, to Patoka, Illinois. The Capline joint owners contracted with Shell Pipeline Company LP ("Shell") to manage the receipt, transportation, and delivery processes associated with Capline on behalf of Capline's common carriers. Shell kept records for Capline and issued documentation of crude oil movement in the Capline pipeline.

Under Southcap's tariff, a shipper must provide written notice, called a nomination, of the amount of crude the shipper intends to send on the carrier's space, the date upon which the crude is to be delivered, the location where it is to be delivered, and the final destination. The tariff further requires the shipper to identify "in writing the Crude Petroleum type, quality, quantity, and final destination point." After Southcap approves a nomination, it notifies the pipeline operator, which

---

[1]The other joint owners are Marathon Pipe Line LLC, Amoco Pipeline Company, BP Oil Pipeline Company, and Plains All American Pipeline LP.

schedules the shipment.

At the point of entry into Capline,[2] the crude passes through a custody transfer meter, which generates a custody transfer meter ticket.[3] When the oil exits Capline, it passes through another custody transfer meter which generates another custody transfer meter ticket. Shell, as the pipeline operator, maintains the custody transfer meter tickets. Based on the information in the custody transfer meter ticket, Shell creates a split-ticket number for each shipment of crude entering Capline. Shell uses the split-ticket number to create monthly Pipeline Carrier Reports,[4] Connecting Carrier Reports,[5] and a Monthly Report[6] issued to Southcap. Southcap, in turn, uses these reports to prepare a monthly Statement of Oil Account ("monthly statement") for each of its shippers.[7] From the monthly statement Southcap prepares an invoice for each shipper. Shell also compares Capline's total book inventory to the total physical amount of crude in Capline on a monthly basis and identifies and

---

[2]Oil enters Capline at either St. James, Louisiana, or Liberty, Mississippi, and exits at either Premcor's Memphis refinery or to a connecting carrier at Patoka, Illinois.

[3]The custody transfer meter ticket contains the batch number; date and time of receipt or delivery; location and method of entry into and exit from Capline; directions for delivery; crude oil type, quality, and quantity; and the name of the individual operating the meter that generates the ticket.

[4]A Pipeline Carrier Report shows the monthly volume and type of crude oil, by shipper, received on a Capline carrier's space.

[5]A Connecting Carrier Report shows the monthly volume and type of crude oil, by shipper, received by or from Capline.

[6]A Monthly Report summarizes all of a carrier's activities for a given month, including opening and closing inventories, receipts, and deliveries. The Monthly Report is sent to each Capline carrier. Premcor was not provided copies of these reports prior to this litigation.

[7]The monthly Statement of Oil Account contains a shipper's opening and closing inventory, receipts, and deliveries for the previous month, accounting adjustments, and line fill requirements.

resolves any discrepancies that appear.

At the end of November 2002, Premcor had a negative inventory on Southcap of 309,312.80 barrels. Premcor's line fill requirement was 462,469 barrels. In January 2003, Premcor requested that an accounting adjustment be made to the December 2002 monthly statement reflecting an addition of crude barrels to its book inventory. Southcap made an adjustment on its monthly statement to Premcor for December 2002, which included an addition of 432,775 barrels of crude oil designated as Qua Iboe.

In May 2003, Premcor delivered 418,357.32 barrels of Brent crude oil to Capline for shipment by Southcap. A portion of the Brent crude was delivered in May of 2003, and the remainder in June 2003. Delivery out of Capline was not reflected in Shell's May 2003 statement. Shell issued a revised statement before July 2003 which indicated the receipt of the Brent crude. Southcap did not credit Premcor with the Brent shipment on its May 2003 monthly statement. Instead Southcap credited the Brent shipment on its June 2003 monthly statement to Premcor.

Prior to June 2004, Shell changed its method of record keeping from a manual statement, which did not breakdown a carrier's inventory by crude type, to an automated statement which did. During this transition, for several months, Shell generated both manual (not crude-type specific) and automated (crude-type specific) statements. For the months in which both statements were generated, the manual statement, which did not specify import crude type, was Shell's official inventory statement.

In 2003, Capline's owners requested that Capline's crude oil book inventory amounts be reconciled to the physical crude oil inventory by crude type.[8] When Shell reconciled Capline's

---

[8]Previously, Capline did not report import crude inventory by specific crude oil type.

physical and book inventories, the total volume of crude Shell reported matched the total physical count for Southcap in April 2004. Although total volumes were in balance, imbalances existed by crude type. As a result, in the fall of 2004, Southcap "regraded," or reallocated Premcor's inventory balances to reconcile the imbalances among crude types. Among other changes, Southcap reduced Premcor's book inventory of Qua Iboe by 19,464 barrels.[9] This reallocation was reflected on the September 2004 monthly statement. From September of 2004 through December 2005, Southcap's monthly statements to Premcor indicated end-of-month inventory balances of 418,357.27 barrels of Qua Iboe.

In December 2005, Southcap informed Premcor (now a subsidiary of Valero) of its intention to remove the remaining 418,357 barrels of Qua Iboe from Premcor's book inventory. Valero objected to the removal of the barrels and subsequently filed this lawsuit seeking recovery of the barrels. In August 2006, Valero nominated 418,357 barrels of Qua Iboe for delivery. Southcap declined this nomination.

*Motions for Summary Judgment*

In their motion for summary judgment (Doc. 118) Plaintiffs argue that the Brent crude delivered to Capline in May 2003, and reflected on the May and June 2003 monthly statements, was double counted and improperly added to Premcor's inventory a second time in June 2004 on or around the time of Shell's record keeping change. This second addition created an imbalance in Southcap's book inventory for Premcor. To remedy this discrepancy Southcap improperly removed 418,457 barrels of Qua Iboe from their inventory. Plaintiffs argue they are entitled to judgment as a matter of law on their legal claims of violations of the ICA, breach of contract, conversion, and

---

[9]Southcap reduced Premcor's Qua Iboe inventory from 437,821.27 barrels to 418,357.27 barrels.

-5-

declaratory judgment in their favor.

In its motion for summary judgment (Doc. 119), Defendant Southcap argues it is entitled to judgment as a matter of law because Plaintiffs have not proved that 418,357 barrels of Qua Iboe were ever delivered into their inventory. Such a showing is an element of their claims under the ICA. Defendant also argues that the Carmack Amendment to the ICA preempts Plaintiffs' state law breach of contract and conversion claims. The Court heard oral argument on both motions for summary judgment on August 6, 2009.

**CONCLUSIONS OF LAW**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois, Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). Summary judgment should be rendered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

*Claims under the Interstate Commerce Act*

The Interstate Commerce Act governs interstate carriers of oil in pipelines. *See generally*, 18 C.F.R. § 341.0 et seq.[10] Under the Carmack Amendment to the ICA, carriers are liable for loss, damage, or injury to property they transport. To state a prima facie case in an action to recover damages for such loss, a plaintiff must demonstrate "delivery in good condition, arrival in damaged condition, and the amount of damages." *Missouri Pac. R. Co. v. Elmore and Stahl*, 377 U.S. 134, 137-138 (1964); *see also REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 699 (7th Cir. 2008). If a plaintiff establishes its prima facie case, the burden shifts to the defendant "to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Id.* (quoting *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys.*, 325 F.3d 924, 929 (7th Cir. 2003)).[11]

The parties agree that the ICA is the controlling federal law over these claims. They disagree, however, as to what is required to demonstrate delivery under the first element of an ICA claim. Defendant makes the straightforward argument that Plaintiffs have not demonstrated with sufficient evidence that there ever was a delivery to Capline of 418,357 barrels of Qua Iboe. Therefore, Defendant argues, Plaintiffs cannot establish their prima facie case under the ICA. Plaintiffs argue that because records prior to 1999 do not exist, they cannot show a specific receipt and delivery of 418,357 barrels of Qua Iboe into Capline. In essence they argue that making such a showing is

---

[10]Although the ICA was repealed in 1978, and authority for regulation of transportation of oil was transferred from the Interstate Commerce Commission to FERC, Congress provided that the 1977 provisions of the ICA would continue to govern FERC's regulation of oil pipelines. *See ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945, 956 (D.C. Cir. 2007).

[11]A carrier is exempt from liability where the damage was caused by (a) an act of God; (b) the public enemy; (c) an act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods. *Elmore and Stahl*, 377 U.S. at 137.

impossible. They contend, however, that their evidence that the total volume of crude physically present in the system matched Southcap's book inventory prior to the 2004 reallocation of the Qua Iboe in question is sufficient to demonstrate delivery. Plaintiffs further contend that the ICA requires Southcap to provide accurate accounting of oil shipped on their space on the pipeline.

Based on these arguments, the Court finds that neither party is entitled to judgment as a matter of law on the ICA claims and that there are genuine issues of material fact to be resolved at trial regarding the element of delivery in establishing Plaintiffs' prima facie case. Accordingly, both Plaintiffs' and Defendant's motions for summary judgment are **DENIED** as to Counts I, II, and III of the complaint.

*Preemption of State Law Claims*

The Carmack Amendment preempts state and common law remedies inconsistent with the ICA. *Hughes v. United Van Lines*, 829 F.2d 1407, 1415 (7th Cir. 1987) (holding that state and common law remedies–including negligence, breach of contract, and conversion–were preempted by Carmack Amendment claims involving damage or loss of goods in interstate commerce); *Gordon v. United Van Lines, Inc.*, 829 F.2d 282, 289 (7th Cir. 1997) (holding that Carmack Amendment does not preempt state law claims that allege liability on a ground that is "separate and distinct" from the loss of or damage to the goods, but indicating that "[s]tate law claims for losses or damage to the cargo, however, whether described under a contract theory or a tort theory, are preempted by the Carmack Amendment").

In addition to the claims under the ICA, Plaintiffs' complaint also raises state law breach of contract and conversion claims. Defendant argues that the Carmack Amendment preempts both of these state law claims. At oral argument, Plaintiffs did not argue that the claims are not preempted.

Instead, Plaintiffs indicated they brought the state law claims because they believed that the facts underlying the action did not fit the typical ICA pattern. The Court rejects this argument. Because both the contract and tort claims allege liability based upon the loss or damage to the oil in question, the Court finds that the Carmack Amendment to the ICA preempts the state law claims. Accordingly, Plaintiffs' motion for summary judgment is **DENIED** as to Counts IV and V, and Defendant's motion for summary judgment is **GRANTED** as to Counts IV and V. Judgment in favor of Defendant on Counts IV and V shall be entered at the close of the action.

*Declaratory Judgment*

Plaintiffs seek declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201. The Court has found that genuine issues of material fact exist regarding the ICA claims. These unresolved issues of fact preclude entry of declaratory judgment in favor of Plaintiffs. Therefore, both Plaintiffs' and Defendant's motions for summary judgment are **DENIED** as to Count VI seeking declaratory relief.

## CONCLUSION

Based on all the foregoing, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Specifically, Counts IV and V are dismissed from the action, leaving Counts I, II, III, and VI to be determined after a bench trial.

**IT IS SO ORDERED.**

**DATED: August 12, 2009**

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**